Date signed June 08, 2006



*James F. Schneider*

**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| BALTIMORE MARINE INDUSTRIES, INC., | * | Case No. 03-80215-JS |
| | * | (Chapter 11) |
| Debtor | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION DENYING THE MOTION OF BALTIMORE COUNTY, MARYLAND, FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Baltimore County, Maryland, filed the instant motion for allowance and payment of an administrative expense claim against the proceeds of sale of all of the Chapter 11 debtor's assets, to which the debtor's liquidating agent objected. For the reasons stated, the administrative claim will be disallowed.

### FINDINGS OF FACT

On June 11, 2003, the instant Chapter 11 case was filed by Baltimore Marine Industries, Inc. ("BMI"), a closely-held Delaware corporation that owned and operated a shipyard located in Sparrows Point, Baltimore County, Maryland. The shipyard

comprised 226 acres with docks, piers, basins, cranes and shops. Among the debtor's assets were a variable large, crude, carrier-capable drydock ("VLCC"), and a floating dock, employed in the multiple repair, conversion and construction of large seagoing vessels.

The Sparrows Point shipyard was built by Maryland Steel Company in 1889 and bought by Bethlehem Steel Company in 1917. During World War II, the shipyard was one of the leaders in this nation's war effort, producing an unprecedented number of ocean-going vessels, including tankers, cargo and passenger ships for military use. In those years, the shipyard was one of the State's largest employers with more than 20,000 workers producing ships on a daily basis around the clock.

Bethlehem Steel sold the shipyard to Veritas Capital of New York for $16 million, at which time BMI was established to operate the facility. The company planned to engage in ship repair but lack of business forced it to layoff hundreds of employees.

On October 24, 2003, the debtor-in-possession filed a motion for the approval of the public sale of all of its real and personal property free and clear of liens and encumbrances. [P. 334]. On October 30, 2003, the motion was granted by order. [P. 343]. On November 5, 2003, an  auction of all estate assets was conducted and Barletta Willis Investments, LLC ("Barletta Willis"), was the successful buyer for a

total bid of $11,250,000 [P. 538]. On March 4, 2004, the sale closed. BMI did not

file a liability-transfer report indicating that it had transferred ownership of personal

property during the tax year, pursuant to Maryland Tax-Prop. Code § 10-402(b)

(2004).[1] After the sale, Barletta  Willis assigned its rights in the property to SPS

---

[1]Maryland Tax-Property Code § 10-402(b) provides:

>    (b)(1) If a transfer of all personal property or all the stock in business of a business occurs on or after the date of finality and before the semiannual date of finality the property is assessed to the transferee as if the property were escaped property under § 8-417 of this article, if the transferor or the transferee files with the Department or the supervisor on or before the October 1 immediately after the date of the transfer a report, under oath, that contains:

>>    (I) a description of the personal property from the assessment roll;

>>    (ii) the date and manner of transfer;

>>    (iii) the name and address of the transferee;

>>    (iv) the consideration; and

>>    (v) any other information that the Department requires.

>    (2) If the report is not filed, the transferor and the transferee are jointly and severally liable for the next taxable year following the transfer.

>    (3) This subsection does not apply to any personal property or stock in business removed from the State before the semiannual date of finality.

>    (4) If the transferor of personal property that is transferred under

3

Limited Partnership.  The shipyard currently serves as a repair and demolition site for commercial and military vessels.

Meanwhile, on September 9, 2003, Baltimore County, Maryland, by Deputy County Attorney John E. Beverungen, Esquire, filed an application for administrative expenses [P. 289], unrelated to the administrative claim which is the subject of this opinion.  This incontestable fact is relevant to the present dispute because Mr. Beverungen, on behalf of Baltimore County, has filed electronic pleadings and in turn has received electronic notice of every pleading filed in the instant Chapter 11 case since September 9, 2003.[2]

On April 14, 2004, BMI and the Official Committee of Unsecured Creditors filed a Joint Plan of Liquidation [P. 702].  With respect to administrative claims, the plan provided, on page one, as follows:

_____

this section has paid the property tax, the transferor may require the transferee to adjust the property tax with the transferor.

*Id.*

[2]Since April 7, 2003, with some exceptions, all bankruptcy cases filed in this district have been required to be filed electronically, pursuant to Administrative Order No. 03-02, dated April 4, 2003, which implemented Case Management /Electronic Case Filing ("CM/ECF").  The instant bankruptcy case was initiated by a petition filed electronically over the Internet, and all subsequent pleadings filed by the parties, including Baltimore County, were likewise electronically filed..

      1.1. "Administrative Bar Date" means forty-five (45) days after the Effective Date and is the date by which applications for allowance of Administrative Expense Claims incurred through the Confirmation Date must be filed with the Court or be forever barred and discharged. Notice of confirmation of the Plan shall be deemed sufficient and adequate notice of the Administrative Bar Date.

Plan, Art. I , § 1.1  [P.702].  The plan further provided, as follows:

      8.8.  Deadline for Filing Administrative Expense Claims. Notwithstanding § 503(a) of the Bankruptcy Code, any person or entity seeking the allowance or payment of an Administrative Expense Claim under § 503 of the Bankruptcy Code any/or any Professional Person or firm retained with approval by order of the Court seeking compensation in this Chapter 11 case pursuant to §§ 330 or 503(b) of the bankruptcy Code, shall be required to file on or before the Administrative Bar Date an application for the allowance and/or payment of an Administrative Expense Claim including, without limitation, an application for the final compensation of a Professional Person and reimbursement of expenses. Any such Administrative Expense Claim not filed by the Administrative Bar Date shall be forever barred and discharged. Objections to any such application shall be filed on or before a date to be set by the Court. The provisions of this paragraph are not intended to limit or expand the ability of the Court to allow the payment of compensation to Professional Persons for services performed after the Confirmation date; all such compensation remaining subject to approval by the Court.

Pla, Art. VIII, § 8.8. [P. 702].

      On June 25, 2004, the Court [Derby, J.], confirmed the plan by order [P. 800].

Pursuant to the plan and the order of confirmation, Alan M. Grochal, Esquire, was

appointed liquidating agent with authority to distribute the sale proceeds to creditors

in accordance with the priorities set forth in the Bankruptcy Code. The record reflects

that Mr. Beverungen timely received a copy of the plan, disclosure statement and the order of confirmation via electronic notice on the dates they were filed.

No appeal having been filed, the confirmation order became final on July 6, 2004, and, therefore, the effective date of the plan was July 21, 2004.[3] Forty-five days thereafter was September 4, 2004, 45 days after the effective date, but because that day was a Saturday, and because the following Monday, September 6, was the Labor Day holiday, the administrative bar date was Tuesday, September 7, 2004.

On October 1, 2004, the Maryland State department of Assessments and Taxation assessed BMI's personal property taxes in the amount of $47,712.52, for the levy period July 1, 2004 through June 30, 2005 [P. 970].  *See* Maryland Tax-Prop. Code § 10-204.3(f)(1)(iv) (2004).

On November 22, 2004, Baltimore County filed the instant motion, seeking allowance and payment of an administrative expense claim for BMI's unpaid personal property taxes, pursuant to 11 U.S.C. § 503.[4]

---

[3]The Joint Plan defined the "Effective Date" as "the later of (a) the fifteenth (15th) day after an Order of Confirmation becomes final by expiration of the time for appeal therefrom, and (b) if an appeal is taken, the fifteenth (15th) day after an order on appeal in favor of confirmation (and all orders on appeal relating to said order) becomes a final non-appealable Order."  Joint Plan, Art. VIII, § 1.24 [P. 702].

[4]Oddly enough, the County's administrative claim was asserted to be based upon 11 U.S.C. § 503(b)(1)(A), which provides, as follows:

Despite the fact that the County filed its claim more two months after the

_____

§ 503. Allowance of administrative expenses

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–

(1)(A) the actual, necessary costs and expenses of preserving the estate including–

(i) wages, salaries, and commissions for services rendered after the commencement of the case; and

(ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title[.]

*Id.* As a claim for unpaid taxes, the County's claim should have been premised upon 11 U.S.C. § (b)(1)(B)(i), which provides, as follows:

(B) any tax–

`      (I) incurred by the estate, whether secured or unsecured, including property taxes for which liability is *in rem*, *in personam*, or both, except a tax of a kind specified in section 507(a)(8) of this title[.]

11 U.S.C. § 503(b)(1)(B)(i).

7

administrative bar date of September 7, 2004, its motion made no mention of any reason excusing the lateness of the claim.  The issue of lateness was raised in the objection of the liquidating agent, which prompted the County to reply.

## CONCLUSIONS OF LAW

This Court has exclusive subject matter jurisdiction to allow or disallow the administrative claim of Baltimore County, Maryland.  28 U.S.C. § 157(b)(2)(B).[5]

---

[5]Section 157(b)(1) and (2)(B) provides:

### § 157. Procedures

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to--

\*          \*          \*          \*          \*

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

*Id*.

## I.  THE COUNTY'S CITATION OF THE INCORRECT SUBSECTION OF 11 U.S.C. § 503 WAS NOT FATAL TO ITS ADMINISTRATIVE CLAIM.

The administrative claim at issue is one for unpaid taxes.  Even though the County miscited the applicable subsection of the statute, the fact that it correctly cited Section 503 placed the liquidating agent on notice that the County sought to have its tax claim accorded administrative priority.  Under the circumstances, the Court finds no prejudice to anyone caused by the County's error and accordingly will treat the claim as one based upon the proper subsection of the statute, to wit, Section 503(b)(1)(B).

## II.  THE CLAIM QUALIFIES FOR ADMINISTRATIVE PRIORITY UNDER THE BANKRUPTCY CODE.

If the claim had been timely filed, the Court finds that it would have been entitled to administrative priority.  To be entitled to administrative priority treatment, the tax claim at issue must have arisen as an unsecured postpetition claim against the debtor's bankruptcy estate.  11 U.S.C. § 503(b)(1)(B)(i).  It will not be accorded administrative status if the claim arose against the debtor before this case was filed on June 2003.

The determination of when a claim for personal property tax arises against a debtor for purposes of determining whether or not it is an administrative claim has already been decided in this district.  In the case of *In re Wang Zi Cashmere Products,*

*Inc.*, 202 B.R. 228 (Bankr. D. Md. 1996), Judge Derby held that the "date of finality," namely January 1 of the tax year that commences on July 1 next is the operative date for determining whether a tax claim arose prepetition or postpetition. Md. Code Ann., Tax-Prop. §§ 1- 101(I), 8-107(a) (2004).[6] This is so, because in Maryland, an owner of personal property becomes liable for the taxes on the personalty as of the date of finality, even though the tax itself does not become due and owing until July 1. That the claim against the owner may be unliquidated and contingent on January 1 is of no moment, because the definition of "claim" under the Bankruptcy Code means "any right to payment," whether liquidated or contingent. 11 U.S.C. § 101(5). 202 B.R. at 230. Thus, Judge Derby concluded that even though the filing of a debtor's tax return was not due until April 15, and the payment of the tax itself not due until July 1, liability for the claim arose on January 1. In *Wang Zi,* this meant that the claim arose prepetition and therefore, was not entitled to administrative claim priority. *Id.*

In the case of *In re The Pasta Café Corp.,* 284 B.R. 564 (Bankr. D. Md. 2002), building upon the rational of *Wang Zi,* Judge Keir held that a personal property tax claim not only arose prepetition and therefore was not entitled to administrative priority, but because it was also a secured by a statutory lien, it was not even entitled

---

[6]"'Date of finality' means January 1, when assessments become final for the taxable year next following." *Id.* § 1-101(I).

10

to eighth-level priority as an unsecured governmental claim, pursuant to 11 U.S.C. §

507(a)(8).[7]  *The Pasta Café*, 284 B.R. at 568.

_____

[7]Section 507(a)(8) provides as to priority:

> Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for–

> (A) a tax on or measured by income or gross receipts-

> (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

> (ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

> (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

> (B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;

> (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

> (D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

11

The instant claim for unpaid personal property taxes for the 2004-05 tax year

arose postpetition, that is, after June 11, 2003, on January 1, 2004, the date of finality.

On that date, BMI, the debtor in possession, was the owner of record of its property,

---

(E) an excise tax on–

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

(F) a customs duty arising out of the importation of merchandise–

(i) entered for consumption within one year before the date of the filing of the petition;

(ii) covered by an entry liquidated or reliquidated within one year before the date of the filing of the petition; or

(iii) entered for consumption within four years before the date of the filing of the petition but unliquidated on such date, if the Secretary of the Treasury certifies that failure to liquidate such entry was due to an investigation pending on such date into assessment of antidumping or countervailing duties or fraud, or if information needed for the proper appraisement or classification of such merchandise was not available to the appropriate customs officer before such date; or

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

11 U.S.C. § 507(a)(8).  Quoted in *The Pasta Café Corp.,* 284 B.R. at 567-8, fn. 6.

both real and personal.  Even though the auction occurred on November 5 of the preceding year,[8] the sale did not close until March 4, well after the date of finality.

The owner of personal property on the date of finality is liable for the personal property tax, unless otherwise provided.  *Id.* § 10-401.  If personal property is transferred between January 1 and July 1,[9] a liability-transfer report must be filed by the transferor before October 1 in order to shift the personal property tax liability to the transferee.  *Id.* at § 10-402(b); *In re Wang Zi Cashmere Products, Inc.*, 202 B.R. at 232.  *Cf. In re Reamy*, 169 B.R. 352 (Bankr. D. Md. 1994), regarding the difference in treatment of tax liability when real property is transferred, *citing* Md. Tax Code § 14-805(a).

In the instant case, BMI filed no such report.  Therefore, the bankruptcy estate and the transferee are jointly and severally liable for the full amount of the personal

---

[8]This is an entirely different situation from that faced by debtors in such cases as *Community Development Admin. v. De Souza (In re De Souza),* 135 B.R. 793 (Bankr. D. Md. 1992) and *Homeside Lending, Inc. v. Denny (In re Denny),* 242 B.R. 593 (Bankr. D. Md. 1999), where this Court (Mannes and Keir, J. J.), held that debtors were dispossessed of their interests in property when the gavel fell at public foreclosure sales, with no further ability to redeem the property in the bankruptcy court.  In the instant case, the ***voluntary***, court-approved sale did not become final until settlement because it was at that point that the actual transfer of ownership of the property occurred.  If BMI and Barletta Willis had not reached agreement to close the sale on March 4, 2004, this Court retained jurisdiction over the property to either enforce the sale or rescind it.

[9]The semiannual date of finality. *See id.* § 1-101(ff).

property taxes for the period July 1, 2004, through June 30, 2005, first due on July 1, 2004.

Because the debtor's liability for payment of the personal property tax became fixed postpetition, and because BMI is jointly and severally liable for its payment, the tax was incurred by the debtor within the meaning of Section 503.

In the case of *In re Merry-Go-Round Enterprises, Inc.*, 227 B.R. 775 (Bankr. D. Md. 1998), Judge Derby held that because personal property taxes were "'incurred by the estate' and are not a tax specified in 11 U.S.C. § 507(a)(8),[10] they [were] entitled to treatment as a Chapter 11 administrative claim pursuant to 11 U.S.C. § 503(b)(1)(B)(i)." *Id.*, at 784. *Accord, City of White Plains v. A & S Galleria Real Estate, Inc. (In re Federated Dep't Stores, Inc.)*, 270 F.3d 994, 1006 (6th Cir. 2001); *Perpetual Am. Bank v. District of Columbia (In re Carlisle Court, Inc.)*, 36 B.R. 209 (Bankr. D. D.C. 1983).

BMI asserted that because the estate no longer possesses the personal property, it will receive no benefit by the payment of the tax at issue. However, it is obvious that benefit to the estate is not a prerequisite for the allowance of a tax claim as an administrative expense under the statute. The only requirement for a tax to be

---

[10]11 U.S.C. § 507(a)(8) refers to property taxes solely incurred prepetition and thus is not applicable to the postpetition property taxes at issue here.

14

accorded administrative priority under the statute is that it must be incurred by the bankruptcy estate, and thereby of necessity, be incurred postpetition.  11 U.S.C. § 503(b)(1)(B)(i); *West Virginia State Dep't of Tax & Revenue v. Internal Revenue Service (In re Columbia Gas Transmission Corp.)*, 37 F.3d 982, 984 (3rd Cir. 1994) (If the property tax was incurred by the estate, it must be given priority as an administrative expense.); *Mailman Steam Carpet Cleaning, Inc. v. Salem (In re Mailman Steam Carpet Cleaning, Inc. (In re Mailman Steam Carpet Cleaning, Inc.)*, 256 B.R. 240 (Bankr. D. Mass. 2000), *reversed on other grounds, sub. nom. Salem v. Mailman Steam Carpet Cleaning, Inc. (In re Mailman Steam Carpet Cleaning, Inc.)*, 270 B.R. 82 (BAP 1st Cir. 2001); *In re Farris*, 205 B.R. 461, 465 (Bankr. E.D. Pa. 1997) ("In order to receive administrative expense treatment, a tax must merely be incurred by the estate."); *In re Trowbridge*, 74 B.R. 484 486 (Bankr. E.D. Pa. 1987)("Whether a tax is incurred by the estate may well be a different question from whether a tax benefits the estate or is necessary to the preservation of the estate."); *Flatau v. Jackson (Matter of Hirsch-Franklin Enterprises, Inc.*, 63 B.R. 864 (Bankr. M.D. Ga. 1986); *In re Sunset Enterprises, Inc.*, 49 B.R. 296 (Bankr. W.D. Va.1985) (postpetition abandoned mine reclamation fees are administrative expenses, as postpetition taxes, although these fees benefit the public and not the individual mine

operator); *Perpetual American Bank v. District of Columbia (In re Carlisle Court, Inc.)*, 36 B.R. 209, 217 (Bankr.D.D.C.1983).

## III. THE CLAIM WAS NOT TIMELY-FILED AND CANNOT BE ALLOWED BASED UPON "EXCUSABLE NEGLECT."

The allowance of an untimely filed claim depends upon a finding that the failure to file on time was the result of the claimant's "excusable neglect." Fed. R. Bankr. Proc. 9006(b)(1).[11]  As stated by Judge Mannes in *McDow v. Runkle* (*In re Runkle*, 333 B.R. 734, 736 (Bankr. D. Md. 2005):

> It is established that Bankruptcy Rule 9006(a) can extend a deadline established by another bankruptcy rule. "The time-computation and time-extension provisions of Rule 9006 ... are generally applicable to any time requirement found elsewhere *in the rules unless expressly excepted*." *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 113 S. Ct. 1489, 1495 n. 4, 123 L. Ed.2d 74 (1993) (emphasis added). *See Kontrick v. Ryan*, 540 U.S. 443, 124 S. Ct. 906, 913-14, 157 L. Ed.2d 867 (2004); *In re Beck*, 220 B.R. 573 (Bankr. D. Md. 1998) (the time limitations set forth in Bankruptcy Rule 4007(c) are procedural, and not jurisdictional, in nature and therefore are governed by Bankruptcy Rule 9006(a)).

--------

[11]Bankruptcy Rule 9006(b)(1) states:

[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by the order of the court, the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. Proc. 9006(b)(1).

*Id.* In *Pioneer*, the Supreme Court stated:

> With regard to determining whether a party's neglect of a deadline is excusable, we are in substantial agreement with the factors identified by the Court of Appeals. Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498, 123 L. Ed.2d at 89. (Citations and footnotes omitted.)

The burden is on the County to prove that it did not timely file its proof of claim because of excusable neglect. *In re Andover Togs, Inc.,* 231 B.R. 521, 549 (Bankr. S.D. N.Y. 1999); *Maxwell Macmillan Realization Liquidating Trust v. Aboff (In re Macmillan),* 186 B.R. 35, 49 (Bankr. S.D. N.Y.1995). That burden has not been met because the County had actual notice of the administrative bar date and therefore cannot demonstrate excusable neglect.

The County blames its delay in filing the claim on the debtor's failure to file a liability-transfer report. It claims that it only became aware that the tax was due on October 1, 2004, when the SDAT generated the tax assessment. However, by reason of its participation in the bankruptcy case as an electronic filer, the County had actual

17

and immediate notice of the sale motion, the auction sale on November 5, 2003, the fact that settlement occurred on March 4, 2004, the confirmation of the plan on June 25, 2004, and the administrative bar date of September 7, 2004.

Ironically, it was the failure of BMI to file the liability-transfer report after settlement of the sale to Barletta Willis that preserved the liability of the bankruptcy estate for the payment of the tax. The County had actual notice that the sale had occurred and was on inquiry notice that the liability-transfer report was not filed. Even before the plan was confirmed on June 25, 2004, the County knew that it had an administrative claim against the estate for unpaid personal property taxes. When they were not paid on July 1, presumably by either the transferor or transferee, the taxes became delinquent. However, in light of its knowledge of the events as they transpired in the bankruptcy case, the County cannot succeed upon the argument that the first date it became aware that it had an administrative claim against the estate was October 1, when it received notice of the nonpayment of the tax. In the context of this case, the County's ministerial procedures for the collection of the personal property taxes at issue were trumped by the confirmed plan.

"The most important of the factors identified in *Pioneer* for determining whether 'neglect' is 'excusable' is the reason for the failure to file." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996). The County's neglect

in not timely filing its claim is not excusable.  The auction sale at issue was a major event, the transfer of an historically important industrial site, namely a 226-acre shipyard for more than $ 11 million dollars, with dramatic economic implications for the County and the State of Maryland.  The County knew about the sale and the debtor's liability for the tax well before the administrative bar date.

Because the County has not articulated a sufficient reason for its delay in filing the claim after the bar date, this Court need not consider the other factors enunciated in *Pioneer, supra.*[12]

WHEREFORE, the motion of Baltimore County, Maryland, for the allowance and payment of personal property taxes as an administrative expense claim in the amount of $ 47,712.52 will be DENIED.

ORDER ACCORDINGLY.

---

[12]Cases after *Pioneer* have sought to catalog various factors in determining whether a debtor will be prejudiced by allowing a late claim.  "These include the size of the late claim in relation to the estate, whether a disclosure statement or plan has been filed or confirmed with knowledge of the existence of the claim, the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated."  *In Re Keene Corp.*, 188 B.R. 903, 910 (Bankr. S.D. N.Y. 1995).  *See also In re Enron Corp.*, 298 B.R. 513, 525 (Bankr. S.D. N.Y. 2003), *aff'd,* 419 F.3d 115 (2nd Cir. 2005).

cc:   John E. Beverungen, Esquire
Deputy County Attorney
Baltimore County Office of Law
Old Courthouse
400 Washington Ave, 2nd Floor
Towson, Maryland  21204

Alan M. Grochal, Esquire
Tydings and Rosenberg, LLP
100 East Pratt Street, Floor 26
Baltimore, Maryland  21202
Liquidating Agent

Randall L. Hagen, Esquire
Ober, Kaler, Grimes & Shriver
120 E. Baltimore Street
Baltimore, Maryland  21202
Counsel to SPS Limited Partnership

Cameron J. MacDonald, Esquire
Karen H. Moore, Esquire
Dennis J. Shaffer, Esquire
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street
Baltimore, Maryland  21202
Counsel to Baltimore Marine, Inc.

Douglas S. Draper, Esquire
Heller, Draper, Hayden, Patrick, & Horn, LLC
650 Poydras Street, Suite 2500
New Orleans, Louisiana  70130
Counsel to the Official Committee of Unsecured Creditors

Office of the United States Trustee
United States Courthouse
101 W. Lombard Street, Suite 2625
Baltimore, Maryland 21202

20